UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIAN HUETHER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:21-cv-00783 |
| | ) |
| CONTINENTAL AEROSPACE | ) |
| TECHNOLOGIES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs in this matter are family members of Shelli Huether, Jessica Wright, and Alan Bumpus, each of whom died in a September 2020 airplane crash. Plaintiffs allege defective engine parts caused the crash. They are suing Continental Aerospace Technologies, Inc., and associated entities (collectively, "Continental"), claiming Continental designed, manufactured, and installed the defective engine parts and is responsible for the deaths of Plaintiffs' family members. Plaintiffs originally sued in state court. Continental then removed the claims to this Court.

Before the Court are motions from both parties alleging the Court lacks jurisdiction. Continental has moved for dismissal for lack of personal jurisdiction. (Doc. Nos. 11, 14).[1] Plaintiffs have moved for a remand for lack of subject matter jurisdiction. (Doc. Nos. 28, 33, 35). As is customary, the Court will consider whether it has subject matter jurisdiction first.[2] Because the Court finds it lacks subject matter jurisdiction, it will remand this case to state court.

---

[1] Citations herein are to the docket of Case No. 3:21-cv-00783 unless otherwise specified (this case was consolidated from three separate actions).

[2] As a preliminary matter, however, the Court will dismiss claims against Continental Aerospace Technologies Limited ("CATL")—which was apparently sued based on mistaken information—for lack of personal jurisdiction. Both parties agree that CATL "played no role" in the deaths at issue and that the Court lacks personal jurisdiction over it. (Doc. No. 32 at 1; Doc. No. 54 at 2).

I.  **BACKGROUND**[3]

   A.  <u>The Crash</u>

In May 2018, Ms. Huether purchased a Piper-PA-28-181 aircraft ("Piper Airplane").[4] (Doc. No. 1-1 ¶ 12 ("Huether Compl.")). In "late 2018 or early 2019," Ms. Huether sought a vendor to rebuild the Piper Airplane's engine. (Id. ¶ 14). She chose Continental, which performed the rebuild on January 29, 2019. (Id. ¶¶ 14, 16). Continental replaced the engine's cylinders with new cylinders it had "manufactured and inspected." (Id. ¶¶ 16, 18). Later, in July 2019, Continental inspected the engine again and determined it was airworthy. (Id. ¶ 22).

On September 8, 2020, Ms. Huether took Ms. Wright and Mr. Bumpus on a flight in the Piper Airplane. (Id. ¶ 25; Complaint, <u>Bumpus v. Continental Aerospace Technologies, Inc.</u>, No. 3:21-cv-00784 (M.D. Tenn. Oct. 13, 2021), ECF No. 1-1 ¶ 2 ("Bumpus Compl.")). The plane suffered a "catastrophic engine failure" and crashed, killing Ms. Huether, Ms. Wright, and Mr. Bumpus. (Bumpus Compl. ¶ 2). Plaintiffs filed three separate actions against Continental in state court, alleging the engine parts it had installed were faulty. (Huether Compl. ¶ 33; Bumpus Compl. ¶¶ 30–31; Complaint, <u>Wright v. Continental Aerospace Technologies, Inc.</u>, No. 3:21-cv-00785 (M.D. Tenn. Oct. 13, 2021), ECF No. 1-1 ¶ 55 ("Wright Compl.")). In particular, Plaintiffs alleged the cylinders Continental placed in the Piper Airplane's engine were defectively designed. (Bumpus Compl. ¶ 31; Wright Compl. ¶ 56).

---

[3] "Where, as here, [a] district court treats [a] motion to remand as a facial attack on the court's jurisdiction, [it] look[s] only to the pleadings—the complaint and the notice of removal—for the relevant facts." <u>Mays v. City of Flint</u>, 871 F.3d 437, 442 (6th Cir. 2017).

[4] Ms. Huether later transferred ownership of the Piper Airplane to an LLC that she controlled. (Huether Compl. ¶ 12). For ease of reference, the Court will refer to Ms. Huether and the LLC collectively as "Ms. Huether."

B.  The Cylinders

The design of cylinders like those Continental placed in the Piper Airplane's engine are subject to regulations set by the Federal Aviation Administration ("FAA"). See 14 C.F.R. § 183.29; United States v. Varig Airlines, 467 U.S. 797, 807 (1984). The FAA uses Designated Engineering Representatives ("DERs") to help ensure aircraft manufacturers comply with FAA regulations. 14 C.F.R. §§ 183.1, 183.29. DERs are "private persons" authorized "to act as representatives of the [FAA] in examining, inspecting, and testing persons and aircraft." Id. A DER reviewed the "design data and accompanying substantiating engineering reports" of the new cylinders placed in the Piper Airplane's engine. (Declaration of Michael Ward, Bumpus v. Continental Aerospace Technologies, Inc., No. 3:21-cv-00784 (M.D. Tenn. Oct. 13, 2021), ECF No. 2 ¶ 7 ("Ward Decl.")). The DER "recommended approval" of the cylinders. (Id.).

C.  Procedural History

Continental removed Plaintiffs' lawsuits to this Court on October 13, 2021. (Doc. No. 1; Notice of Removal, Bumpus v. Continental Aerospace Technologies, Inc., No. 3:21-cv-00784 (M.D. Tenn. Oct. 13, 2021), ECF No. 1; Notice of Removal, Wright v. Continental Aerospace Technologies, Inc., No. 3:21-cv-00785 (M.D. Tenn. Oct. 13, 2021), ECF No. 1). Continental invoked 28 U.S.C. § 1442, which is also known as the "federal officer removal statute," as the basis for this Court's subject matter jurisdiction.[5] Id. The Court consolidated Plaintiffs' lawsuits into one action on October 22, 2021. (Doc. No. 21). Plaintiffs filed motions to remand alleging the Court lacks subject matter jurisdiction on November 1, 2021 and November 2, 2021. (Doc. Nos. 28, 33, 35). The motions have been fully briefed. (Doc. Nos. 28, 33, 35, 54, 59).

---

[5] Continental also used the Foreign Sovereign Immunities Act ("FSIA") to justify removal as to CATL. (Doc. No. 1 at 2). The Court need not address the FSIA because, as previously noted, the Court is dismissing CATL from this matter.

3

## II. LEGAL STANDARD

A court has subject matter jurisdiction over a case where it has the "statutory or constitutional power to adjudicate the case." Herr v. U.S. Forest Serv., 803 F.3d 809, 813 (6th Cir. 2015) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998)). The "stakes" of inquiries into subject matter jurisdiction "are high." Id. "In the absence of subject-matter jurisdiction, a federal court must dismiss the lawsuit—no matter how far along the litigation has progressed (including to the last-available appeal), no matter whether the parties forfeited the issue, no matter indeed whether the parties have waived it." Id. at 813–14.

On a motion to remand for lack of subject matter jurisdiction, the party that removed the case to federal court "bears the burden of establishing that removal was proper." State ex rel. Slatery v. Tenn. Valley Auth., 311 F. Supp. 3d 896, 902 (M.D. Tenn. 2018); see also Mays, 871 F.3d at 442 ("As the party seeking removal, the MDEQ Defendants bear the burden of establishing federal court jurisdiction."); Lu Junhong v. Boeing Co., 792 F.3d 805, 810 (7th Cir. 2015). Accordingly, courts resolve "all doubts . . . in favor of remand."[6] Slatery, 871 F.3d at 442 (quoting Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999)).

## III. ANALYSIS

Continental claims this Court has subject matter jurisdiction based on 28 U.S.C. § 1442. (Doc. No. 54 at 1). Under § 1442, the United States, its officers, and entities that have "acted

---

[6] In his dissent in Mays, Judge McKeague argued that although doubts are generally resolved in favor of remand, removals under 28 U.S.C. § 1442 are "a different animal." 871 F.3d at 454 (McKeague, J., dissenting). According to Judge McKeague, because the "fundamental basis for removal under this statute is the *status* of the defendant as a federal officer or one acting under a federal officer" and this "status would ordinarily be set forth in the defendant's notice of removal, not in the plaintiff's complaint," all doubts should "be resolved in favor of removal." (Id.). In this case, whether Judge McKeague's interpretation is correct is immaterial. As outlined herein, removal was improper even if the Court assumes the truth of Continental's allegations and resolves doubts in its favor.

4

under" such officers may remove state-court lawsuits to federal court if they are "being sued for actions taken under color of federal law." Mays, 871 F.3d at 443, 449. Continental argues removal was proper because it "acted under" the FAA in designing and manufacturing the Piper Airplane's allegedly defective engine parts. (Doc. No. 54 at 8). The Court disagrees.

  A. <u>Under 28 U.S.C. § 1442, Entities "Act Under" Federal Officers Where They Assist Officers in the Performance of Their Duties.</u>

The Supreme Court, and circuits across the country, have closely considered what it means for an entity to "act under" a federal officer under § 1442. E.g., Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 151 (2007); Mays, 871 F.3d at 442; Lu Junhong, 792 F.3d at 809. They have held the entity must be in a relationship with a federal officer who holds "a superior position or office." Watson, 551 U.S. at 151 (citation and quotation omitted). The relationship "typically involves subjection, guidance, or control." Id. And the entity must be involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Id. at 152. For example, "a local police officer who accompanie[d] a federal agent on a drug raid and act[ed] under the federal agent's direction" could avail himself of § 1442. Lu Junhong, 792 F.3d at 809.

Notably, "the help or assistance necessary to bring a private person within the scope of [§ 1442] does *not* include simply *complying* with the law."[7] Watson, 551 U.S. at 152. This is true even where an entity's compliance efforts involve extensive interaction with federal officers. Hence, Mays held the Michigan Department of Environmental Quality did not "act under" the federal Environmental Protection Agency ("EPA") even though it had to "periodically submit reports to the EPA detailing compliance with regulations." 871 F.3d at 446. Similarly, Lu Junhong

---

[7] The Watson Court "recognize[d] that sometimes an English speaker might say that one who complies with the law," such as a "[t]axpayer[] who fill[s] out complex federal tax forms," "'helps' or 'assists' governmental law enforcement." 551 U.S. at 152. However, "that is not the sense of 'help' or 'assist' that can bring a private action within the scope of [§ 1442]." Id.

5

held that an airplane manufacturer did not "act under" the FAA even though the FAA granted it authority to inspect aircraft designs and "self-certif[y]" that the designs complied with federal regulations. 792 F.3d at 808.

    B.    <u>Continental Did Not Assist Federal Officers in the Performance of Their Duties as Required by 28 U.S.C. § 1442.</u>

Continental has not established it assisted federal officers in the performance of their duties when it manufactured and installed the Piper Airplane's engine parts. Continental claims the "'acting under' component is present in this case because the allegedly defective parts were designed with recommended approval from [a] DER." (Doc. No. 54 at 8). According to Continental, this "DER made a determination for the FAA" that the engine parts "met the requirements of the applicable regulations." (Ward Decl. ¶ 7). However, accepting Continental's claims as true would only indicate Continental *complied* with federal regulations. Because compliance is not assistance, <u>Watson</u>, 551 U.S. at 152, Continental has not established that it aided federal officers in the performance of their duties.

Nothing in Continental's response undermines the Court's conclusion. Continental spends a substantial portion of its brief contending that DERs "act under" the authority of federal officers. (Doc. No. 54 at 5–10). But that is irrelevant. Removal under § 1442 is only permitted for lawsuits "against or directed to" federal officers and entities that acted thereunder. 28 U.S.C. § 1442. And Plaintiffs' lawsuit is not "against or directed to" the DER that recommended approval of Continental's cylinder designs; it is against Continental itself. (Huether Compl. ¶¶ 1–11; Bumpus Compl. ¶¶ 4–14; Wright Compl. ¶¶ 1–5). Continental cannot invoke § 1442 simply because it received oversight from a DER that acted under federal officers.

Even if DERs were federal officers (as opposed to persons acting under federal officers), that would not mean Continental properly removed this case under § 1442. A company does not

6

"act under" a federal officer merely because the officer "directs, supervises, and monitors [the] company's activities in considerable detail." See Watson, 551 U.S. at 145. "A contrary determination would expand the scope of [§ 1442] considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." Id. at 153. Here, at best, Continental has only alleged a DER directed, supervised, and monitored the design and manufacture of the Piper Airplane's engine parts. (Doc. No. 54 at 5–10; Ward Decl. ¶¶ 1–9). Absent more—such as some reason to believe Continental assisted in the performance of federal duties—the Court cannot approve removal under § 1442.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motions to Remand (Doc. Nos. 28, 33, 35) will be granted.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE